UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATIONAL PAYMENT SYSTEMS OF WASHINGTON, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DERRIK BRANDON HAKES, ADAM POWELL WARD, HAKES ENTERPRISES LLC, and CAMELOT PAYMENTS LLC,<br><br>Defendants, | Case No. _____<br><br>**COMPLAINT**<br><br>**WITH JURY DEMAND** |

Plaintiff National Payment Systems of Washington, LLC ("NPS"), by and through its undersigned counsel, and for its Complaint against Defendants Derrik Brandon Hakes ("Hakes"), Adam Powell Ward ("Ward"), Hakes Enterprises LLC d/b/a Crusader Payments ("Crusader Payments"), and Camelot Payments LLC ("Camelot Payments"), states and avers as follows:

**NATURE OF THIS ACTION**

1. This is an action for trade secret misappropriation under federal and state law pursuant to the Defend Trade Secrets Act of 2016 ("DTSA") codified at 18 U.S.C. 1836 et seq.

COMPLAINT WITH JURY DEMAND - 1

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

and the Washington Uniform Trade Secrets Act ("WUTSA") codified at Wash. Rev. Stat. § 19.108.010 et seq.  Also raised herein are common-law claims for breach of fiduciary duty/duty of loyalty, and breach of contract.

**PARTIES**

2.  NPS is a limited liability company organized and existing under the laws of the State of Washington.

3.  Hakes is a private individual and a resident of the State of Washington.

4.  Ward is a private individual and a resident of the State of Washington.

5.  Crusader Payments is a limited liability company organized and existing under the laws of the State of Washington.  On information and belief, Hakes is the sole governor of Crusader Payments.

6.  Camelot Payments is a limited liability company organized and existing under the laws of the State of Washington.  On information and belief, Ward is one of the governors of Camelot Payments.

**JURISDICTION AND VENUE**

7.  This action arises under the laws of the United States, namely the DTSA codified at 18 U.S.C. § 1836 et seq.  This Court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

8.  This action also arises under the laws of the State of Washington.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1367 because the actions giving rise to claims under applicable state law are the same and/or related to the actions giving rise to the asserted claims under federal law.  As such, the claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

COMPLAINT WITH JURY DEMAND - 2

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

9. The Court has personal jurisdiction over Defendants as all Defendants either currently reside in the State of Washington, have a regular and established place of business within the State of Washington, have had minimum contacts with the State of Washington sufficient to confer the Court with general personal jurisdiction, or have committed acts within the State of Washington giving rise to the claims asserted herein.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and/or (2) because at least one Defendant resides in this judicial district, and/or because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this judicial district.

## FACTUAL BACKGROUND

**A.  NPS's Business Model**

11. NPS is a merchant services and electronic payments company based in Vancouver, Washington.  It markets cutting-edge payments and business management solutions and technology to merchant businesses of all sizes that accept card-based payments for goods and services across the United States.  Merchant service providers, like NPS, are often referred to as independent sales organizations (or "ISOs").  An ISO is a company that sells credit card processing services independently from a financial firm or bank.  ISOs, like NPS, solicit and aggregate merchant accounts on behalf of acquiring banks (or more typically on behalf of larger and better positioned ISOs), to earn a residual income stream, or portion thereof, on successfully boarded merchant accounts based upon monthly transaction volume/quality, service fees, and any final markup of merchant fees.

12. The merchant services field is highly competitive, with many market participants vying to board a limited number of merchants in a given geographic area.  Over several years, NPS has developed confidential, proprietary, and trade secret information it uses to leverage an

COMPLAINT WITH JURY DEMAND - 3

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington  99201-0506
(509) 747-4040

advantage over its competitors. First and foremost, NPS maintains a list of current and former customers and either purchases from third parties or develops compiled lists of prospective customers or "leads" for merchant services. This information concerning current and prospective customers is proverbially "worth its weight in gold" to NPS, and NPS accordingly takes several measures to protect and maintain its confidentiality.

13. For example, NPS requires all new employees to sign a noncompetition, nonsolicitation, and confidentiality agreement upon hire; physically restricts access in its office to properly credential individuals; and virtually restricts electronic access to confidential and trade secret information to properly credentialed personnel via password protection.

14. In addition to lists of current and prospective customers, NPS maintains paper records containing detailed information on current, former and prospective merchant customers (the "Proprietary Customer Information"). The Proprietary Customer Information includes, among other things, information concerning a merchant's size, ownership, DBA, phone number, state of incorporation, contact information, monthly processing volume, current processing services provider (if any), and credit rating. Like the leads lists, the Proprietary Customer Information is highly valuable to NPS, is not readily available from another source, and is the product of relationships that NPS has established over time and at considerable expense.

B.   **NPS Hires Hakes and Ward**

15. On or around November 8, 2013, National Payment Systems, LLC—an affiliate of NPS—hired Ward as HR and Compliance Director. On or around October 30, 2015, Ward transitioned to the role of Senior Vice President of NPS.

16. On or around November 7, 2014, NPS hired Hakes as a General Manager.

COMPLAINT WITH JURY DEMAND - 4

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

17.   On information and belief, at the time Hakes accepted employment at NPS or at some time prior to his resignation, he signed an Employee Acknowledgement Form (hereinafter, the "Employment Agreement"), which provides:

> During my employment and for a period of 9 months after my employment terminates for any reason, I will not directly and indirectly be in competition with National Payment Systems of Washington, LLC. Anywhere [sic] in the United States, including without limitation soliciting or doing business with any National Payment Systems of Washington, LLC customer or soliciting any National Payment Systems of Washington, LLC employee. I will never disclose, copy, use or sell any confidential information regarding National Payment Systems of Washington, LLC to any other competitor or merchant service company.

18.   During their employment with NPS, Hakes and Ward were responsible for establishing, fostering and maintaining relationships with NPS's customers and referral sources. Hakes and Ward were compensated, in part, based on commissions generated from boarding new merchant customers.

19.   During their employment with NPS, Hakes and Ward, and each of them, also had access to NPS's confidential, proprietary, and trade secret information, including, but not limited to, NPS customer lists and lead lists containing the names and contact information for prospective customers; Proprietary Customer Information; information concerning NPS's pricing and marketing of its services; and NPS's training materials.

**C.   Hakes and Ward Form LLCs and Begin Groundwork To Compete With NPS While Still Employed by NPS**

20.   On September 23, 2020, while Hakes was still employed with NPS, Hakes formed Crusader Payments by filing a Certificate of Formation with the Washington Secretary of State.

COMPLAINT WITH JURY DEMAND - 5

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

The website for Crusader Payments states that Crusader Payments is in the business of providing "certified processing services[.]"

21. On December 1, 2020, while Ward was still employed with NPS, Ward formed Camelot Payments by filing a Certificate of Formation with the Secretary of State. The website for Camelot Payments states that it is an "[e]xperienced merchant service provider[.]"

22. On November 3, 2020, Ward forwarded an email containing a leads list purchased by NPS on September 28, 2020 to Hakes' personal email account. The leads lists generated or purchased by NPS is the confidential, proprietary and trade secret information of NPS. On information and belief, Ward forwarded the leads list to Hakes for Hakes to use in establishing a competing merchant services company, Crusader Payments, and to solicit potential NPS customers. On information and belief, Ward has also used this leads list in establishing his own competing merchant services company, Camelot Payments, and to solicit potential NPS customers.

23. On November 10, 2020, while still employed at NPS, Hakes emailed a representative of Azura Leasing, stating: "[W]e spoke a while back and I am finally getting my company kicked off. I will be leasing equipment to my merchants and I plan on starting off doing about 20 to 30 deals per month." Azura Leasing is an equipment leasing company that leases card payment processing equipment (e.g., card readers and terminals).

24. On November 12, 2020, while still employed at NPS, Ward emailed Hakes, attaching a logo for Crusader Payments.

25. On November 13, 2020, while still employed at NPS, Hakes emailed a representative of North American Bancard attaching several documents necessary for Hakes and Crusader Payments to begin a business relationship with North American Bancard. North American Bancard is a merchant services provider that specializes in providing credit card processing services to merchants.

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

26. On November 16, 2020, while still employed at NPS, Hakes subscribed to Payments Hub—a merchant portal system offered by North American Bancard.

27. On November 24, 2020, while still employed by NPS, Hakes, on behalf of Crusader Payments, entered into an Equipment Lease and Origination Agreement with Ascentium Capital, LLC ("Ascentium") pursuant to which Crusader Payments would originate leases of card payment processing equipment (e.g., payment card terminals) and Ascentium would provide compensation to Crusader Payments for such lease referrals/assignments.

28. Also on or around November 24, 2020, Hakes, on behalf of Crusader Payments, also executed a Merchant Finance Partner Application, identifying North American Bancard as the "Processor Company."

29. On December 2, 2020, while Hakes was still employed at NPS, Hakes emailed NPS's then Sales Manager, Christopher Carl Carlstrom ("Carlstrom"), instructing him to watch a training video and noting "this will be . . . how we can make our money." Hakes also instructed Carlstrom to review two schedules prepared for Crusader Payments by North American Bancard titled "Residual Bonus Free Equipment" and "Residual Only" which provides fees and assessments for various merchant services.

30. On December 9, 2020, a representative of Ascentium Capital emailed Hakes, stating "[y]our portal access has been granted" and "[g]ood luck with your first deals."

31. On information and belief, Hakes' and Ward's efforts in establishing a competing business went beyond mere preparation to compete. Information supporting this belief includes, but is not limited to, the fact that Ward emailed Hakes a confidential and proprietary leads list from his personal email account while both were still employed by NPS and that Crusader Payments boarded at least one merchant identified on the leads list shortly after the resignation of Ward and Hakes.

COMPLAINT WITH JURY DEMAND - 7

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

### D. Hakes and Ward Resign From NPS and Fraudulently File for Unemployment

32. On December 28, 2020, Hakes and Ward resigned from their positions at NPS. Ward's last day in NPS's office was December 29, 2020 and Hakes' last day in NPS's office was January 8, 2021.

33. On February 8, 2021, Ward sent Hakes contact information for representatives of NPS's business partners (Ascentium and First Data) in order to, on information and belief, establish relationships with Hakes' new company, Crusader Payments, and compete against NPS.

34. On February 9, 2021, Ward forwarded an email to Hakes, stating "I'm combing through my old emails" and sent Hakes confidential and proprietary information on Time Payments leasing company. Time Payments is an equipment leasing company that leases card payment processing equipment (e.g., card readers and terminals).

35. Despite having formed competing companies and having resigned from their respective positions at NPS, on January 14 and 22, 2021, respectively, Hakes and Ward filed for unemployment benefits with the Washington State Employment Security Department.

### E. Hakes Steals NPS's Proprietary Customer Information

36. As noted above, among NPS's confidential and trade secret information is the Proprietary Customer Information maintained by NPS. The Proprietary Customer Information was located in boxes near Hakes' workspace at NPS and, on information and belief, Hakes was aware of the existence and location of the Proprietary Customer Information. On information and belief, Hakes has stolen several physical boxes containing Proprietary Customer Information in an attempt to steal deals from underneath NPS.

COMPLAINT WITH JURY DEMAND - 8

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

**F.     Defendants Solicit NPS's Current and Prospective Customers Using NPS's Confidential and Trade Secret Information**

37. On information and belief, Defendants have used NPS's confidential, proprietary and trade secret information to solicit and sign former customers and potential customers of NPS and compete with NPS:

a) On November 16, 2020, NPS lost an opportunity with Munson Bridge Winery, Inc. On information and belief, Crusader Payments solicited and signed this merchant as of January 7, 2021. This merchant was identified on leads lists maintained by NPS.

b) Chifrijo Restaurant was signed by NPS on April 21, 2020 and closed its account on August 25, 2020. On information and belief, Crusader Payments solicited and signed this merchant as of January 29, 2021. This merchant was identified on a leads list maintained by NPS.

c) On November 23, 2020, NPS lost an opportunity with Mountain Electronics, LLC. On information and belief, Crusader Payments solicited and signed this merchant as of February 23, 2021. This merchant was identified on a leads list maintained by NPS.

d) Crusader Payments solicited and signed Royal Shine Auto Detailing, LLC as of February 24, 2021. This merchant was identified on the leads list maintained by NPS and forwarded from Ward to Hakes on November 3, 2020.

e) On information and belief, Hakes and Crusader Payments have solicited and signed other potential customers of NPS.

COMPLAINT WITH JURY DEMAND - 9

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

## CLAIMS FOR RELIEF

### Count I: Violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 et seq.
### (All Defendants)

38. NPS incorporates by reference paragraphs 1-37 above as if fully set forth herein.

39. NPS developed and owns confidential, proprietary, and trade secret information, including, but not limited to, customer lists and leads lists identifying prospective customers. This information constitutes financial, business, scientific, technical, economic and/or engineering information. NPS's customer lists, lead lists, and Proprietary Customer Information specifically are a compilation of information that is valuable because it is unknown to others and, as described below, NPS has made reasonable attempts to keep the information secret.

40. NPS has taken reasonable measures to keep such information as described above secret, including, but not limited to, by requiring employees to sign a noncompetition and confidentiality agreement upon hire; physically restricting access in its office to properly credentialed individuals; and virtually restricting electronic access to proprietary and trade secret information to properly credentialed personnel via password protection.

41. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information. The information at issue would be of tremendous value to Defendants in their efforts to develop a new client base for merchant services.

42. In violation of NPS's rights under the Defend Trade Secrets Act, 18 U.S.C. § 1836, Defendants misappropriated the confidential, proprietary, and trade secret information described above in an improper and unlawful manner as alleged herein. Defendants Crusader Payments and

COMPLAINT WITH JURY DEMAND - 10

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

Camelot Payments have misappropriated NPS's trade secrets under federal law because they acquired NPS's trade secret information knowing or having reason to know that it was acquired by improper means. Additionally, Defendants Crusader Payments and Camelot Payments misappropriated NPS's trade secrets because at the time they obtained and/or used NPS's trade secret information without NPS's permission, Defendants Crusader Payments and Camelot Payments knew or had reason to know their knowledge of the trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived it from or through a person who owed a duty to NPS to maintain its secrecy or limit its use.

43. Defendants' conduct as described herein was intentional, knowing, willful, malicious, fraudulent and oppressive.

44. As a direct and proximate result of Defendants' conduct, NPS has suffered and will continued to suffer irreparable financial loss, loss of goodwill, and irreparable loss of the confidentiality of its proprietary and trade secret information, for which there is no adequate remedy at law.

45. NPS has also suffered substantial damages as a direct and proximate result of Defendants' conduct in an amount to be proven at trial.

46. Defendants have also been unjustly enriched by their misappropriation of NPS's trade secrets in an amount to be proven at trial.

**Count II: Violation of the Washington Uniform Trade Secrets Act (WUTSA),
Wash. Rev. Code § 19.108.010
(All Defendants)**

47. NPS incorporates by reference paragraphs 1-46 above as if fully set forth herein.

COMPLAINT WITH JURY DEMAND - 11

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

48. As explained above, NPS has developed, owns, and possesses certain confidential, proprietary, and trade secret information, including, but not limited to, customer lists and lead lists identifying prospective customers.

49. NPS has taken reasonable measures to keep such information secret, as described above, including, but not limited to, by requiring employees to sign a noncompetition and confidentiality agreement upon hire; physically restricting access in its office to properly credentialed individuals; and virtually restricting electronic access to proprietary and trade secret information to properly credentialed personnel via password protection.

50. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information. The information at issue would be of tremendous value to Defendants in their efforts to develop a new client base for merchant services.

51. In violation of NPS's rights under the Washington Uniform Trade Secrets Act (WUTSA), Wash. Rev. Code § 19.108.010 et seq., Defendants misappropriated the confidential, proprietary, and trade secret information described above in an improper and unlawful manner as alleged herein. Defendants Crusader Payments and Camelot Payments have misappropriated NPS's trade secrets under federal law because they acquired NPS's trade secret information knowing or having reason to know that it was acquired by improper means. Additionally, Defendants Crusader Payments and Camelot Payments misappropriated NPS's trade secrets because at the time they obtained and/or used NPS's trade secret information without NPS's permission, Defendants Crusader Payments and Camelot Payments knew or had reason to know their knowledge of the trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its

COMPLAINT WITH JURY DEMAND - 12

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington  99201-0506
(509) 747-4040

secrecy or limit its use, or derived it from or through a person who owed a duty to NPS to maintain its secrecy or limit its use.

52. Defendants' conduct as described herein was intentional, knowing, willful, malicious, fraudulent, and oppressive.

53. As a direct and proximate result of Defendants' conduct, NPS has suffered and will continue to suffer irreparable financial loss, loss of goodwill, and irreparable loss of the confidentiality of its proprietary and trade secret information, for which there is no adequate remedy at law.

54. NPS has also suffered substantial damages as a direct and proximate result of Defendants' conduct in an amount to be proven at trial.

55. Defendants have also been unjustly enriched by their misappropriation of NPS's trade secrets in an amount to be proven at trial.

**Count III: Threatened Misappropriation of Trade Secrets**
**(All Defendants)**

56. NPS incorporates by reference paragraphs 1-55 above as if fully set forth herein.

57. Defendants possess substantial information and knowledge about NPS's confidential, proprietary and trade secret information, including, but not limited to, the identity of NPS's current customers and potential customer leads.

58. The information Defendants possess constitutes trade secrets under the WUTSA and DTSA. Defendants are under an obligation to refrain from retaining or using on their own behalf or on behalf of others trade secret information of NPS or disclosing NPS's trade secret information.

COMPLAINT WITH JURY DEMAND - 13

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington  99201-0506
(509) 747-4040

59. Hakes and Ward each formed competing companies—Crusader Payments and Camelot Payments—while still employed with NPS and in violation of the restrictive covenants of their employment agreements with NPS. To the extent Defendants have not already misappropriated NPS's trade secrets, these acts establish threatened misappropriation.

60. NPS will suffer irreparable harm if Defendants are able to continue to retain NPS's confidential trade secrets and, on information and belief, inevitably use or disclose those trade secrets on behalf of themselves or others.

61. NPS is entitled to permanent injunctive relief to enjoin the threat of misappropriation, including, but not limited to, an injunction barring Defendants from using or disclosing NPS's trade secrets and confidential information.

## Count IV: Breach of Contract
### (Hakes)

62. NPS incorporates by reference paragraphs 1-61 above as if fully set forth herein.

63. At all relevant times, Hakes had a valid and enforceable contract with NPS pursuant to which Hakes agreed:

> During my employment and for a period of 9 months after my employment terminates for any reason, I will not directly and indirectly be in competition with National Payment Systems of Washington, LLC. Anywhere [sic] in the United States, including without limitation soliciting or doing business with any National Payment Systems of Washington, LLC customer or soliciting any National Payment Systems of Washington, LLC employee. I will never disclose, copy, use or sell any confidential information regarding National Payment Systems of Washington, LLC to any other competitor or merchant service company.

64. On information and belief, Hakes breached the contractual duties owed to NPS by, *inter alia*:

COMPLAINT WITH JURY DEMAND - 14

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

a) Stealing NPS's confidential and trade secret information, including, but not limited to, NPS's customer lists, leads lists and Proprietary Customer Information;

b) Forming a new competing business, Crusader Payments, while he was still employed with NPS;

c) Engaging in direct or indirect competition with NPS;

d) Disclosing NPS's confidential and/or trade secret information to unauthorized parties—including, but not limited to, his new business, Crusader Payments; and

e) Soliciting or doing business with current and former NPS customers.

65. The noncompetition provision of Hakes' employment agreement satisfies the statutory requirements of Wash. Rev. Code § 49.62.010. First, NPS disclosed the terms of the noncompete covenant in writing to Hakes. Second, Hakes earned more than $100,000 per year prior to his resignation. Third, Hakes' separation was not the result of being laid off by NPS.

66. Furthermore, the restrictive covenants in Hakes' employment agreement are reasonable. The restrictive covenants are necessary for the protection of the business and goodwill of NPS, the restrictive covenants do not impose upon Hakes any greater restraint than is reasonably necessary to secure NPS's business or goodwill, and the degree of injury to the public is such loss of service and skill of Hakes is such as to warrant enforcement of the covenant.

67. Hakes' breach of his duties has proximately caused NPS harm, both in the form of irreparable harm and monetary damages to be determined at trial.

COMPLAINT WITH JURY DEMAND - 15

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington  99201-0506
(509) 747-4040

**Count V: Breach of Fiduciary Duty/Duty of Loyalty**
**(Hakes and Ward)**

68. NPS incorporates by reference paragraphs 1-67 above as if fully set forth herein.

69. Hakes and Ward each owed NPS duties of loyalty while employed by NPS, requiring that each act at all times in NPS's interest and not take actions materially detrimental to NPS.

70. On information and belief, each of Hakes and Ward breached duties of loyalty while still employed by NPS and continuing thereafter by acting for his own benefit rather than NPS's by, among other things:

   a) Using NPS's computers and resources to further their inappropriate activities and on behalf of themselves or their newly-formed companies;

   b) Without consent or authorization from NPS, retaining and using confidential, proprietary, and trade secret information of NPS including NPS's customer lists, leads lists, and Proprietary Customer Information;

   c) Forming Crusader Payments and Camelot Payments for the purpose of competing with NPS; and

   d) Soliciting current and/or prospective NPS customers to sign with Crusader Payments and/or Camelot Payments while still employed with NPS.

71. As a consequence of the foregoing, NPS has suffered and will continue to suffer substantial damages and financial loss as a result of lost business, lost profits, and lost goodwill in an amount to be determined at trial.

COMPLAINT WITH JURY DEMAND - 16

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington  99201-0506
(509) 747-4040

## Count VIII: Vicarious Liability
### (All Defendants)

72. NPS incorporates by reference paragraphs 1-71 above as if fully set forth herein.

73. By committing the acts and omissions set forth above, Hakes and Ward—and each of them—have breached, continue to breach and threaten to breach fiduciary duties owed to NPS as agents and employees, including their duty to act in good faith and the duty of loyalty.

74. On information and belief, Hakes and Ward entered into a civil conspiracy to breach their respective fiduciary and contractual duties as part of a common plan or design.

75. On information and belief, Hakes and Ward aided and abetted each other in breaching their respective fiduciary and contractual duties to NPS.

76. Hakes formed Crusader Payments as an alter ego to violate or evade his obligations to NPS. Hakes' use of Crusader Payments to violate his obligations to NPS is an abuse of the corporate form. Piercing the corporate veil to hold Hakes liable for the acts of Crusader Payments is necessary to prevent a loss to NPS.

77. Ward formed Camelot Payments as an alter ego to violate or evade his obligations to NPS. Ward's use of Camelot Payments to violate his obligations to NPS is an abuse of the corporate form. Piercing the corporate veil to hold Ward liable for the acts of Camelot Payments is necessary to prevent a loss to NPS.

## Count IX: Injunction
### (All Defendants)

78. NPS incorporates by reference paragraphs 1-77 above as if fully set forth herein.

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

79. NPS is likely to succeed on the merits of its claim, and the balance of equities between the parties and the public interest weighs in favor of the issuance of a preliminary and/or permanent injunction against Defendants.

80. As a direct and proximate result of the conduct of Defendants, NPS has been injured and has suffered and will continue to suffer irreparable harm in various ways, including the following:

   a) The retention of proprietary, confidential, and trade secret information of NPS;

   b) The inevitable disclosure and use of NPS's proprietary, confidential, and trade secret information;

   c) Use by Hakes on behalf of himself and Crusader Payments of NPS's proprietary, confidential, and trade secret information to solicit NPS's customers or prospective customers;

   d) Use by Ward on behalf of himself and Camelot Payments of NPS's proprietary, confidential, and trade secret information to solicit NPS's customers or prospective customers;

   e) Misappropriation of proprietary, confidential, and trade secret information of NPS;

81. Unless restrained by this Court, Defendants will continue the complained-of acts.

82. Because of the difficulty of measuring both damages and future harm, NPS has an inadequate remedy at law and is entitled to an order enjoining the conduct Defendants.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, NPS hereby demands a jury on all issues so triable.

COMPLAINT WITH JURY DEMAND - 18

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

**PRAYER FOR RELIEF**

WHEREFORE, NPS prays for a judgment as follows:

A. An order preliminarily and permanently enjoining Defendants from using, disclosing, or benefiting directly or indirectly from the use of NPS's confidential and/or trade secret information; and (2) as to Hakes, soliciting, attempting to solicit, or doing business with any NPS customers and competing, directly or indirectly, with NPS.

B. An order requiring Defendants:

   a. To return to NPS its confidential information in possession of Defendants and to disclose all persons/entities to whom Defendants disclosed such information;

   b. To destroy or certify under oath the destruction of all material deriving in any way directly or indirectly, in whole or in part, from NPS's confidential information.

C. A judgment that Hakes breached the noncompetition provisions of his respective employment agreement and that the noncompetition restrictive period is tolled until the resolution of the breach by and through the Court's final order, at which point the nine-month restrictive period will commence.

D. An award of economic damages in an amount to be proved at trial.

E. Exemplary damages under Wash. Rev. Code § 19.108.040, 18 U.S.C. § 1836, and common law.

F. NPS's reasonable attorneys' fees under Wash. Rev. Code § 19.108.040 and 18 U.S.C. § 1836.

G. Prevailing party fees and costs.

H. Such other and further relief as the Court may deem just and equitable.

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington 99201-0506
(509) 747-4040

Dated this 12th day of March 2021.

NATIONAL PAYMENT SYSTEMS OF WASHINGTON, LLC, Plaintiff

By: s/ *Heather C. Yakely*
Heather C. Yakely, # 28848
Attorney for Defendants
Kutak Rock LLP
510 W. Riverside Ave., Ste. 800
Spokane, WA 99201
(509) 747-4040
(509) 747-4545 facsimile
heather.yakely@kutakrock.com

*Attorney for Plaintiff*

COMPLAINT WITH JURY DEMAND - 20

Kutak Rock LLP
Attorneys At Law
Suite 800
510 West Riverside Avenue
Spokane, Washington  99201-0506
(509) 747-4040